CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
April 21, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KAIDENCE NICELY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 7:25cv00276 |
| | ) |
| CITY OF COVINGTON, VIRGINIA, | ) |
| **Serve: Mark C. Popovich** | ) JURY TRIAL DEMANDED |
| **City Attorney** | ) |
| **415 S. College Ave.** | ) |
| **Salem, VA 24153** | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Kaidence Nicely, by counsel, moves for judgment against Defendant City of Covington (hereinafter, "Defendant" or "Covington City"), and as grounds therefore states as follows:

### STATEMENT OF THE CASE, JURISDICTION, AND VENUE

(1)     This is an action for declaratory, injunctive relief and monetary damages, and to address deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e, *et seq.* (hereinafter, "Title VII"), and the Virginia Human Rights Act, Virginia Code §§ 2.2-3900, *et seq.* (hereinafter, "the VHRA"),

(2)     The Court has jurisdiction over this action pursuant to 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1343(a)(4). This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), as the acts and/or omissions giving rise to Plaintiff's VHRA claims arose from the same basis of operative facts and same controversies under the law. Pursuant to 28 U.S.C. § 1367(a),

these claims are so related to claims involving original jurisdiction that they form part of the same case or controversy.

(3)     The claims asserted in this action arose within the western district of Virginia and the alleged discrimination, harassment, and damage occurred in the western district of Virginia. Venue of this action is thus proper pursuant to 42 U.S.C. §2000e, *et seq*.

(4)     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission and the Virginia Office of Civil Rights; received a notice of right to sue dated February 28, 2025; and files this suit pursuant to Va. Code § 2.2-3908(A)(2) and 42 U.S.C. §2000e-5(f)(1) within 90 days of receipt thereof (Exhibit A).

(5)     Defendant Covington City is a political subdivision of the Commonwealth of Virginia.

(6)     At all times material hereto, Covington City is and was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a) and the VHRA, Va. Code § 2.2-3905.  At all times material hereto, Covington City was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b) and the VHRA, Va. Code § 2.2-3905, that is, at all times material hereto, Covington City was a person engaged in an industry affecting commerce which had 15 or more employees for each working day in each of twenty or more calendar weeks during the years of Plaintiff's employment or the preceding calendar year.

(7)     Plaintiff at all times material hereto is and was a resident of the Commonwealth of Virginia and was an "employee" of Defendant Covington City.

## STATEMENT OF FACTS

(8)     Kaidence Nicely is currently 19 years old.

(9)     At the time of the events herein, Ms. Nicely was 17-18 years old and a senior in

high school.

(10)    At the times relevant hereto, Ms. Nicely worked for Covington City as a lifeguard and referee for youth sports, as well as performing other assignments as directed.

(11)    Ms. Nicely enjoyed her work until the sexual harassment by older male Covington City supervisory employees began in July 2023.

(12)    On or about July 22, 2023, Matthew Smith, Recreation Coordinator, started working with Covington City's Parks and Recreation Department.

(13)    In the beginning, Ms. Nicely only interacted with Supervisor Smith in a group setting, while Supervisor Smith learned the processes of closing and maintaining the pool. During this period, their conversations were brief, intermittent, and not related to personal matters.

(14)    In the following weeks, Supervisor Smith, Thomas Smals, Parks and Recreation Director, Ms. Nicely, and two electrical engineers, were assigned to help set up security cameras at Casey Field in preparation for the very first football game of the newly consolidated school system. Alleghany County and Covington City combined their school systems in the 2022/2023 school year but were experiencing their first year as a system that operated in shared buildings and on shared fields, and not just under a shared name. It was late August 2023 when this assignment was given, just before Ms. Nicely's 18th birthday, which shares a date with the inaugural football game.

(15)    While Ms. Nicely and her coworkers were surveying the property for what needed to be done, Ms. Nicely climbed the stairs of the home team stadium to give some information to the men working on the electrical systems for the cameras. As Ms. Nicely was walking up the stairs, Supervisor Smith was behind her and Director Smals was in front of her. Approximately halfway up the bleachers, Ms. Nicely and Supervisor Smith stopped to speak to Director Smals,

as he had stopped on the bleachers to look at something. After the conversation ended, Ms. Nicely and Supervisor Smith began to climb the stairs again; suddenly, Supervisor Smith put his hand into Ms. Nicely's back pocket and removed her cellphone. Ms. Nicely asked Supervisor Smith if her cell phone was about to fall out of her pocket. Supervisor Smith's response was along the lines of , "no, I was just playing with you." Ms. Nicely asked Supervisor Smith for her phone. Supervisor Smith then moved the phone around himself as if to prevent Ms. Nicely from grabbing it. Ms. Nicely then turned away and continued walking up the stairs, asking Supervisor Smith to please not drop her phone. Once Ms. Nicely walked away, Supervisor Smith told Ms. Nicely that she could have her phone back and returned the phone. At the time of this interaction, Supervisor Smith was still being shown the ropes of his new position, and Ms. Nicely was working directly for Director Smals.

(16)   Beginning in September 2023, Ms. Nicely began working more often with Supervisor Smith.

(17)   On September 5, 2023, Ms. Nicely received her first one-on-one assignment with Supervisor Smith.

(18)   On September 7, 2023, Supervisor Smith asked Ms. Nicely if she would like to go get ice cream, while they were returning from a task. Ms. Nicely informed Supervisor Smith that she did not have her wallet, to which he responded that he would cover it for her, and Ms. Nicely stated that Ms. Nicely would cover it next time. Once the two had returned to the car with their ice cream, Supervisor Smith made a statement regarding Director Smals, that he was missing out and Ms. Nicely should send him a picture. Supervisor Smith and Ms. Nicely then took a selfie with their ice cream, and Ms. Nicely forwarded the photo to Mr. Smalls. At the time of this interaction, Ms. Nicely believed Supervisor Smith to be referencing the ice cream outing as the focus of their

photo. In the following weeks, however, Supervisor Smith and Director Smals began to make comments about the clothing Ms. Nicely had on in the photo and made statements regarding the lack of a dress code being enforced in the school division. At the time, Ms. Nicely was wearing loose linen pants and a full-length tank top tucked in at the waist.

(19)    Thereafter, Supervisor Smith became Ms. Nicely's primary supervisor on most occasions, and began to bring her ice cream, unprovoked, on Fridays.

(20)    Beginning in mid-September 2023, Supervisor Smith was no longer giving Ms. Nicely regular assignments.

(21)    On days where Supervisor Smith oversaw Ms. Nicely's activities for the afternoon, he would call Ms. Nicely into his office to "just hang out." On these days Supervisor Smith would ask Ms. Nicely questions about Ms. Nicely's hobbies and interests. Supervisor Smith would play music and talk about the concerts that he had been to and enjoyed. Supervisor Smith would also discuss sports events, teams, and his favorite athletic endeavors. During these conversations, Supervisor Smith began to mention his physical stature; for example, Supervisor Smith commented while walking up the stairs, "I am too big for this." He would make comments entering the vehicle about the size of his body compared to the car. These comments were made in such a way that Ms. Nicely felt Supervisor Smith was frequently attempting to have Ms. Nicely issue him a compliment. Ms. Nicely did not react or respond to these statements.

(22)    After Ms. Nicely had been working under Supervisor Smith for several shifts, Ms. Nicely became sick. Ms. Nicely became congested and extremely fatigued. This illness caused Ms. Nicely to leave early on a few occasions or miss her scheduled shift. Supervisor Smith began to refer to Ms. Nicely's need to miss work for medical reasons by saying things like, "what do you have? Mono? You probably have that because you get around," or "you must have gotten mono

from kissing on all of them guys!" Ms. Nicely initially reacted to these statements by telling Supervisor Smith that she had been dating the same individual for 5 years. However, once Ms. Nicely realized that her response was not stopping Supervisor Smith's remarks, Ms. Nicely no longer responded at all.

(23) After a few episodes of these comments coming from Supervisor Smith, while in his office in private, it escalated to Supervisor Smith commenting things along the lines of, "you must have an Only Fans page to make all that money, so you aren't worried about being here."

(24) OnlyFans is associated with sex workers who produce pornography for money.

(25) To be clear, Ms. Nicely does not and has never had an OnlyFans account.

(26) From this time forward, the comments became incessant.

(27) The comments were humiliating and degrading and caused Ms. Nicely to have trouble focusing on her work.

(28) Supervisor Smith then escalated his harassment by making the sexual remarks in the company of Director Smals, who then joined into the harassment himself.

(29) Supervisor Smith and Director Smals began to find a way to loop OnlyFans and Ms. Nicely's supposed work for OnlyFans into their conversations every day. The jabs came in a new form each time. For example, " Ms. Nicely bet you aren't worried about work today, you are making all of that money on your OnlyFans account," and "you know Kaidence isn't worried about money, she makes all that money on her OnlyFans page;" there were even times that when Ms. Nicely would leave the building, Supervisor Smith and Director Smals would ask Ms. Nicely if Ms. Nicely was going home "to make videos for Ms. Nicely's fans."

(30) These were two adult men making these comments to a high school girl, who they were supposed to be responsible for supervising at work.

(31) At no point did Ms. Nicely engage with, make light of, or encourage these remarks.

(32) Supervisor Smith is almost twice Ms. Nicely's age, and Ms. Nicely's first line supervisor.

(33) Director Smals had been Ms. Nicely's direct supervisor for several years, prior to his promotion.

(34) Due to the sexual harassment and gender discrimination she was enduring, Ms. Nicely began an emotional rollercoaster.

(35) Ms. Nicely started to carry sweatshirts even when it was warm and put them on before entering work.

(36) Ms. Nicely became extra aware of her location if she was in the room with Supervisor Smith and/or Director Smals.

(37) Ms. Nicely started to call ahead and/or text Director Smals to receive her assignment for the day.

(38) If Ms. Nicely knew she would be alone with Supervisor Smith, or in a situation with both Supervisor Smith and Director Smals, Ms. Nicely would skip.

(39) Ms. Nicely needed the income to save for college, and this was part of Ms. Nicely's work study, but Ms. Nicely began to grow weary under the circumstances.

(40) Eventually Supervisor Smith and Director Smals began making the comments in front of anyone and everyone who happened to be around.

(41) On one such instance, Administrative Assistant Lisa Worley was present in the room when Supervisor Smith and Director Smals began to remark ever so jovially back and forth about all of the money Ms. Nicely was making in her side business for OnlyFans.

(42) One afternoon, in the midst of this enduring situation, Ms. Nicely was assigned to

the basement of City Hall, along with Supervisor Smith and Director Smals. Ms. Nicely became anxious. The basement is partitioned off into small sections full of random objects. Some of it is junk, some of it needs organized. Their task for that particular day was to work on cleaning the area up. Ms. Nicely began to feel concerned that if she was left in that situation with only one of these adult men, that she may be put in a situation that was unsafe. After arriving in the basement, Supervisor Smith and Director Smals began to joke amongst themselves about the other individual having "been under" the City Manager's, Allen Dressler's, desk—a reference to performing oral sex to receive better treatment at work. Then, they stated, "No, *she's* (referring to plaintiff) been under Allen's desk!", while they laughed and looked at Ms. Nicely.

(43)	Following that instance, Ms. Nicely informed Director Smals that she intended to continue lifeguarding that summer, but she was not comfortable working for Supervisor Smith.

(44)	Despite Ms. Nicely's report, the sexual comments continued, and no actions were taken to ensure that Ms. Nicely could lifeguard without having to work for Supervisor Smith.

(45)	Ms. Nicely began to watch her outgoing disposition be replaced with anxiety and fixation on making sure she had an exit strategy out of each situation.

(46)	Ms. Nicely traded her excitement for performing a job that she loved, for panic attacks.

(47)	Ms. Nicely traded her trendy clothing and self-confident demeanor, for baggy clothing and wondering if the way she walked or sat would insight new remarks.

(48)	Ms. Nicely began to stick to only well lit, highly occupied, less risky assignments.

(49)	Despite all of her efforts, the harassment continued.

(50)	In fact, the harassment was not just verbal. Supervisor Smals would hug Ms. Nicely at the end of almost every one of her shifts, and even during her shifts sometimes. Moreover,

Supervisor Smals would place his hands on the small of Ms. Nicely's back, or her shoulders, or would physically brush or bump into her if he passed by her.

(51) In October 2023, Ms. Nicely was working for the City in downtown Covington. Ms. Nicely was on Main Street, and people were everywhere. All of the businesses on the street, amongst many other agencies, churches, and organizations, were setting up their tents and displays for their hometown Halloween event. While they were decorating their tent for the event, an individual asked Ms. Nicely what costume Ms. Nicely would be wearing. Ms. Nicely answered and carried on with her tasks. Supervisor Smith then responded with a comment, once again, about Ms. Nicely's plans for the outfit, "Is that also going to be your outfit for your OnlyFans?" Ms. Nicely was in shock. There was no assignment that Ms. Nicely assumed would be safer than this one. If this man could make these remarks in the faces of not only co-workers, but the public at large, then no place would be safe. If he felt comfortable harassing Ms. Nicely and watching Ms. Nicely squirm in front of preachers and business owners, Ms. Nicely knew there was no hope of salvaging her job.

(52) Many employees, all who were higher ranking than Ms. Nicely, witnessed, participated in, and failed to correct or prevent these harassing remarks.

(53) Lisa Worley, Matt Smith, Thomas Smals, and even Thomas Smals' wife, Kaitlyn Smals, had been present when these comments persisted for months.

(54) Forced between continuing to endure sexual harassment that was becoming debilitating, and her job, Ms. Nicely obtained another job, at a local restaurant, hoping she could at least still lifeguard in the summer if Supervisor Smith was not assigned to be her supervisor.

(55) Even then, Ms. Nicely could not escape the harassment.

(56) In December 2023, Director Smals entered the restaurant and asked Ms. Nicely

9

why she had not been by to see him. Ms. Nicely explained, again, that the statements about the OnlyFans were not funny, and Ms. Nicely did not appreciate them. Ms. Nicely asked again if Director Smals would be heading up the staffing for the pool, or if Supervisor Smith would overtake it. Director Smals told Ms. Nicely that he was not sure.

(57) About a month or so later, Ms. Nicely's panic attacks had become more frequent and more unmanageable. Ms. Nicely began having to leave her job and take a walk, or even leave for the night and end her shift early, due to the new overwhelming anxiety.

(58) As a result, Ms. Nicely had to severely reduce her hours with the City, working only as a referee in the winter and spring of 2024 when requested to do so by Administrative Assistant Lisa Worley, not Supervisor Smith and Director Smals.

(59) It reached the point that Ms. Nicely even had to resign from her restaurant job due to the medical effects she was suffering from due to what happened to her while working for the City of Covington.

(60) Ms. Nicely then learned that her minor sister planned to go to work for the City of Covington that summer.

(61) Thus, on Thursday, March 21, 2024, after Ms. Nicely sought help from her aunt regarding the situation, Ms. Nicely's aunt contacted the Alleghany Highlands public schools work study coordinator, Mr. Bradley, and informed him of the situation. She also contacted the Alleghany County police department investigator, Jeremy Morris, and scheduled an interview. On the same day, Ms. Nicely's aunt, Autumn Anderson, contacted Mr. Allen Dressler, the City Manager, to tell him of the events. City Manager Dressler was made aware of the notification of AHPS staff, Mr. Morris, and now, his office. Ms. Nicely's aunt requested an investigation into the events and a speedy decision on how to move forward, as the wellbeing of other young women

who were working under the same leadership, or would be soon, was at risk.

(62) An interview was held with Investigator Morris on the following day, Friday, March 22, 2024. Recounting what she had experienced left Ms. Nicely in a highly emotional state.

(63) On April 3, 2024, Investigator Morris delivered a transcript of Ms. Nicely's report to City Manager Dressler so that his investigation could begin.

(64) On or about April 10, 2024, Ms. Nicely's aunt sent an email to Administrative Assistant Becky Nuckols, requesting an update on the investigation, and asking what, if anything, was needed to move forward. Ms. Nuckols responded by requesting that Ms. Nicely set up a meeting with City Manager Dressler and the Human Resources Department. After some discussion of availability, Ms. Nicely, accompanied by some family members, met with the City Manager and the Human Resources Director, David "BB" Bryant, and Ms. Nuckols.

(65) The traumatic ripple effect Ms. Nicely had endured, psychologically, socially, and emotionally, was reported at this time.

(66) Ms. Nicely addressed her desire to continue to lifeguard but indicated that she could not do so under Supervisor Smith's leadership.

(67) City Manager Dressler stated that he had heard their concerns and apologized for the situation.

(68) City Manager Dressler stated that he could not convey what his actions would be but assured Ms. Nicely that the situation would be dealt with swiftly and appropriately.

(69) However, nothing changed after Ms. Nicely's report.

(70) In fact, on Saturday, May 4, 2024, Ms. Nicely attended senior prom.

(71) To her shock and horror, Supervisor Smith and Director Smals were assigned by City officials to work the prom.

(72)    The crippling anxiety Ms. Nicely encountered upon seeing them resulted in her having to leave, and miss, her senior prom.

## COUNT I: CLAIM FOR TITLE VII SEX HARASSMENT

(73)    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(74)    Defendant had a duty to maintain a work environment free of sex discrimination and harassment.

(75)    Defendant's action and inaction created a hostile and offensive work environment and interfered with Plaintiff's work.

(76)    Defendant knew or should have known of the hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment.

(77)    Defendant further violated federal law by failing to take action reasonably calculated to prevent sex discrimination and harassment and by permitting a work environment to exist that was hostile and offensive to Plaintiff and other women.

(78)    As a direct and proximate result of Defendant's actions and inactions, Plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(79)    At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of compensatory and punitive damages.

(80)    The above-described acts of Defendant constitute sex harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et. seq.*

## COUNT II: CLAIM FOR TITLE VII SEX DISCRIMINATION

(81)   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(82)   Plaintiff's work hours, and therefore her pay, were constructively reduced by Defendant because of her sex.

(83)   As a direct and proximate result of Defendant's actions and inactions, Plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(84)   At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Plaintiff so as to support an award of compensatory and punitive damages.

(85)   The above-described acts of Defendant constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et. seq.*

## COUNT III: CLAIM FOR VHRA SEX HARASSMENT

(86)   Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(87)   Defendant had a duty to maintain a work environment free of sex discrimination and harassment.

(88)   Defendant's action and inaction created a hostile and offensive work environment and interfered with Plaintiff's work.

(89)   Defendant knew or should have known of the hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment.

(90)   Defendant further violated state law by failing to take action reasonably calculated

to prevent sex discrimination and harassment and by permitting a work environment to exist that was hostile and offensive to Plaintiff and other women.

(91)    As a direct and proximate result of Defendant's actions and inactions, Plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(92)    At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the protected rights of Plaintiff so as to support an award of compensatory and punitive damages.

(93)    The above-described acts of Defendant constitute sex harassment in violation of the Virginia Human Rights Act, Va. Code §§ 2.2-3900, *et seq*.

## COUNT IV: CLAIM FOR VHRA SEX DISCRIMINATION

(94)    Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

(95)    Plaintiff's work hours, and therefore her pay, were constructively reduced by Defendant because of her sex.

(96)    As a direct and proximate result of Defendant's actions and inactions, Plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

(97)    At all times material hereto, Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to the protected rights of Plaintiff so as to support an award of compensatory and punitive damages.

(98)    The above-described acts of Defendant constitute sex discrimination in violation of the Virginia Human Rights Act, Va. Code §§ 2.2-3900, *et seq*.

WHEREFORE, Plaintiff Kaidence Nicely demands judgment against Defendant City of Covington, and for equitable relief, injunctive relief, compensatory damages, punitive damages, back pay and benefits, front pay and benefits, together with prejudgment interest, post-judgement interest, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

TRIAL BY JURY IS DEMANDED.

Respectfully Submitted,

KAIDENCE NICELY

By: */s/ Terry N. Grimes*
Terry N. Grimes, Esquire (VSB No. 24127)
tgrimes@terryngrimes.com
TERRY N. GRIMES, ESQ., P.C.
FRANKLIN COMMONS
320 Elm Avenue, SW
Roanoke, Virginia 24016-4001
540-982-3711
540-345-6572 *facsimile*

Brittany M. Haddox (VSB No. 86416)
brittany@haddox.law
HADDOX LAW
1203 Texas Street
Salem, VA 24153
540-765-4284
540-380-0065 *facsimile*

*Counsel for Plaintiff*